UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/2019

PHILLIP BLACKWOOD,

      Plaintiff,

-against-

ANTHONY OMORVAN, OFFICER HINCKLEY OF THE WHITE PLAINS POLICE DEPARTMENT, JOSE RAVINA, SECURITY GUARD WHITE PLAINS HOSPITAL,

      Defendant.

16-cv-644 (NSR)
OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

  Plaintiff Phillip Blackwood ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983 and New York state law against Defendants, White Plains Police Department ("WPPD") Officers Anthony Omorvan and Tyler Hinckley ("Police Defendants") on January 28, 2016,[1] seeking monetary compensation for injuries arising from an incident at White Plains Hospital ("WPH") and a subsequent criminal prosecution. Plaintiff filed his Second Amended Complaint ("SAC"), which is the operative complaint, on August 24, 2016, naming Police Defendants and WPH Security Guard Jose Ravina as Defendants. (ECF No. 9.) By Opinion and Order dated February 8, 2019, the Court dismissed all claims in the SAC as against Defendant Ravina, with prejudice. (ECF No. 71.)

  Presently before the Court is Police Defendants' motion for summary judgment dismissing the SAC as against them pursuant to Federal Rule of Civil Procedure 56. Plaintiff does not oppose the motion. For the following reasons, Police Defendants' motion is GRANTED.

---

[1] Plaintiff's original complaint also included "Westchester County Judge Barbara Zambelli" and "The D.A." as Defendants. (ECF No. 2.) Plaintiff's first amended complaint listed only "White Plains Police Department" and "White Plains Legal Aid Society" as Defendants. (ECF No. 7.)

1

## FACTUAL BACKGROUND

The following facts are taken from the Second Amended Complaint ("SAC"), (ECF No. 9), Police Defendants' Rule 56.1 Statement of Undisputed Material Facts ("56.1 Statement" or "Defs. 56.1"), (ECF No. 84), and the Affirmation of Paul E. Svensson in Support of Motion and annexed exhibits ("Svensson Affirmation" or "Defs. Aff."), (ECF No. 86). While Plaintiff's failure to oppose this motion may be deemed a concession as to the allegations in Police Defendant's 56.1 Statement, since Plaintiff is *pro se*, the Court has searched the record and notes where Plaintiff's testimony contradicts the facts alleged by Police Defendants.

At approximately 2:51 PM on June 7, 2014, Plaintiff was at WPH seeking medical treatment related to pain in his throat. (SAC at 4; Defs. Aff. Ex. L ("Pl. Dep.") 8; Defs. Aff. Ex. D ("Williams Dep.") 9.) Nonparty Kimiko Williams was the nurse assigned to triage at WPH at the time of Plaintiff's entry. (Defs. 56.1 ¶ 1.) Williams briefly spoke to Plaintiff shortly after his arrival at WPH, at about 3:00 PM, and noted that he appeared to be mumbling and was agitated. (*Id.* ¶ 3; Williams Dep. 9–12.) Williams believed that Plaintiff was agitated because he was pacing back and forth and staring into the triage reception area, and repeatedly asked when he was going to be seen, even though he had been at WPH for under half an hour. (Defs. 56.1 ¶¶ 2–3; Williams Dep. 9–12.) Plaintiff confirms that he was agitated during his initial interactions with Williams. (Defs. 56.1 ¶ 4; Pl. Dep. 22.)

Williams attempted to bring Plaintiff to an examination room called the observation room. (Defs. 56.1 ¶ 5.) She asked Plaintiff to follow her and WPH Security Guard Ravina through the main care area to the observation room. (*Id.* ¶¶ 5–6; Williams Dep. 12–13.) When Williams, Ravina, and Plaintiff arrived at the corridor outside the observation room, Williams and Ravina repeatedly asked Plaintiff to enter the observation room to be examined, or, alternatively, to sit on

a stretcher in the hallway. (Defs. 56.1 ¶ 7; Williams Dep. 14–16; Defs. Aff. Ex. H ("Ravina Dep.") 13, 17; Defs. Aff. Ex. F ("Gonzalez Dep.") 9–12.) Plaintiff refused to comply with either directive. (*Id.*; Pl. Dep. 23–27.)

While in the hospital corridor, WPH security video surveillance shows that Plaintiff's behavior escalated over a period of about five minutes, and that he began gesticulating wildly and lunged at Williams and others in an aggressive manner. (Defs. 56.1 ¶¶ 11, 13; Defs. Aff. Ex. M ("WPH Video") 3:04:45–3:11:30.) Williams, Ravina, and nonparty WPH Security Guard Laura Gonzalez attempted to calm Plaintiff, who kept his right hand in his pocket and refused to remove it. (Defs. 56.1 ¶ 9; Pl. Dep. 30; WPH Video 3:04:45–3:11:30.) Williams, Ravina, and Gonzalez, each testified that Plaintiff raised his voice and was shouting obscenities. (Defs. 56.1 ¶ 10.) They also stated that Plaintiff told Ravina that he would cut Ravina and kill him by stabbing him in the neck. (Defs. 56.1 ¶ 12.) Plaintiff testified that he did not curse or threaten to stab anyone. (Pl. Dep. 21, 34.)

Plaintiff's behavior and refusal to take his hand out of his pocket caused Williams, Ravina, and Gonzalez to become concerned for their safety. (Defs. 56.1 ¶¶ 11, 13–14.) Ravina asked Williams to call the police, and she did so. (*Id.* ¶¶ 14–15.) Defendant Officers Omorvan and Hinckley arrived at approximately 3:11 PM and attempted to calm Plaintiff, who continued to gesture aggressively with his left hand, keeping his right hand in his pocket. (*Id.* ¶¶ 16–17; WPH Video 3:11:30–3:15:42.) They asked Plaintiff his name, but Plaintiff refused to answer. (Defs. 56.1 ¶¶ 18–19.) They also ordered Plaintiff to take his hand out of his pocket at least three times, but Plaintiff refused to comply. (*Id.* ¶¶ 20–21.)

Suddenly, at approximately 3:15 PM, Plaintiff took his hand out of his pocket. (*Id.* ¶ 23; WPH Video 3:15:43.) According to Gonzalez, Ravina, and Police Defendants, when Plaintiff did

3

so, he was holding a serrated steak knife. (Defs. 56.1 ¶ 23.) Williams states that she could not actually see what was in Plaintiff's hands, but that when Plaintiff took his hand from his pocket she heard someone scream, "Knife!" (Williams Dep. 24–25.) Ravina confirmed that he was the one who screamed this when he saw the knife. (Ravina Dep. 24.) Plaintiff does not dispute that he was carrying the knife in his right hand pocket,[2] but states that he was not holding the knife when he removed his right hand. (Pl. Dep. 38.) Plaintiff's hands are not sufficiently visible in the surveillance footage submitted by Police Defendants to determine whether Plaintiff was holding a knife.

Omorvan, Hinckley, and Ravina grabbed Plaintiff and they all fell to the ground. (Defs. 56.1 ¶ 24.) Omorvan, Hinckley, and Ravina held Plaintiff down until he dropped the knife and stopped resisting, and then placed Plaintiff in handcuffs. (*Id.* ¶ 25.) Ravina alleges that he broke the knife's handle trying to remove it from Plaintiff's grasp. (Ravina Dep. 26.; *see* Defs. Aff. Ex. N.) Plaintiff disputes this and says the knife he was carrying was already broken, and that he took both broken pieces with him when he left for the hospital. (Pl. Dep. 36.) Plaintiff avers that he was punched in the back of the head several times while he was on the ground, but does not know whether Omorvan, Hinckley, or Ravina punched him. (SAC at 4; Pl. Dep. 41–42.) Williams and Gonzalez both testified that they did not witness anyone punching or kicking Plaintiff. (Defs. 56.1 ¶¶ 27–28.) Plaintiff does not allege that he was punched or kicked after he was placed in handcuffs. (*Id.* ¶ 29.)

Thereafter, Plaintiff was arrested and taken into custody. (Pl. Dep. 46–49.) Plaintiff was eventually charged with criminal possession of a weapon, assaulting a police officer, menacing a

---

[2] Plaintiff's deposition testimony that he was carrying a "butter knife," (Pl. Dep. 46), is belied by his affirmative identification of a photograph of the knife he was carrying, which depicts a serrated steak knife with a broken handle, (*see id.* 35; Defs. Aff. Ex. N).

police officer, and menacing. (Defs. Aff. Ex. J; Pl. Dep. 52.)[3] Plaintiff pled guilty to assaulting a police officer in December of 2015 and was sentenced to two to four years of state custody. (Pl. Dep. p. 56–57, 59–60.)

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 states, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party also may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party, which must identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 244 (S.D.N.Y. 2001).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators*, Inc., 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).

---

[3] Exhibit J of the Svensson Affirmation contains a series of criminal complaints charging Plaintiff with criminal possession of a weapon in the third degree, menacing a police or peace officer, and menacing in the third degree. No criminal complaint charging Plaintiff with assaulting a police officer is included. However, Plaintiff testified that he was charged with assaulting a police officer the night he was taken into custody and ultimately pled guilty to that charge. (Pl. Dep. 52, 56–57.)

Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

"The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). It is incumbent upon the district court to "ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Federal Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). "In doing so, the court may rely on other evidence in the record even if uncited." *Jackson*, 766 F.3d at 194.

Courts are "less demanding" of *pro se* litigants, "particularly where motions for summary judgment are concerned." *Id.* at 195 (citing *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994). Once the court has determined that the movant has established the absence of any triable issue of fact, however, summary judgment may be granted even against a *pro se* litigant, provided that the *pro se* litigant has received adequate notice that failure to file any opposition may result in the entry of summary judgment without trial. *See Champion*, 76 F.3d at 485. The latter requirement is met where, as here, (Defs. Aff. Ex. A), the movant has provided the *pro se* litigant with a written

6

statement expressly warning him that he cannot simply rely on the complaint, that his failure to respond will lead to the Court's accepting the movant's facts as true, and that if he does not respond, summary judgment may be granted against him without trial. *See Champion*, 76 F.3d at 486.

## DISCUSSION

I. **Constitutional Claims**

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 ("Section 1983"). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

Plaintiff asserts that Police Defendants violated his constitutional rights by using excessive force to secure his detention, detaining him without probable cause, and continuing his criminal

prosecution without cause. Thus, Plaintiff brings Section 1983 claims against Police Defendants sounding in (1) false arrest, (2) excessive force, and (3) malicious prosecution. Such Section 1983 claims derive from the Fourth Amendment right to be free from unreasonable seizures. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest); *Graham v. City of New York*, 928 F. Supp. 2d 610, 617 (E.D.N.Y. 2013) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)) (excessive force); *Albright v. Oliver,* 510 U.S. 266, 271–74 (1994) (malicious prosecution). Police Defendants contend that they are entitled to judgment as a matter of law dismissing each of these claims. For the reasons discussed herein, the Court agrees with Police Defendants.

**a. False Arrest**

A Section 1983 false arrest claim "is substantially the same as a claim for false arrest under New York law." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant*, 101 F.3d at 852. To establish a cause of action for false arrest under Section 1983 and New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Ackerson*, 702 F.3d at 19 (quoting *Broughton v. State of New York*, 37 NY2d 451, 456 (1975)).

"An arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013). Thus, probable cause "is an absolute defense to a false arrest claim" brought under New York law or Section 1983." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)); *see Ackerson*, 702 F.3d at 19; *Jaegly v. Couch*, 439 F.3d, 149 152 (2d Cir. 2006) (citing *Weyant*, 101 F.3d at 852). An officer has probable cause to arrest "when he or she has 'knowledge or reasonably

8

trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jaegly*, 439.F.3d. at 152 (quoting *Weyant*, 101 F.3d at 852). In deciding whether probable cause existed for an arrest, a court is required to consider whether "those facts *available to the officer* at the time of the arrest and immediately before it" objectively provided probable cause to arrest. *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)) (emphasis in original). "Whether probable cause existed for the charge 'actually invoked by the arresting officer at the time of arrest' is irrelevant." *Ackerson*, 702 F.3d at 20 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). A defendant defeats a claim for false arrest by establishing that there was probable cause to arrest a plaintiff "for any single offense." *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012) (citing *Jaegly*, 439 F.3d at 154); *see Wallace v. City of Albany*, 283 A.D.2d 872, 873 (N.Y. App. Div. 2001) (under New York law, probable cause "does not require an awareness of a particular crime, but only that some crime may have been committed").

The validity of an arrest "does not depend upon an ultimate finding of guilt or innocence." *Haussman v. Fergus*, 894 F. Supp. 142, 147 (S.D.N.Y. 1995) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). However, a plaintiff's conviction based on a voluntary plea of guilty, even to a lesser charge, establishes probable cause, thereby precluding a subsequent claim of false arrest. *See Baez v. City of New York*, No. 17-CV-1767(BMC)(PK), 2019 WL 1050996, at *3 (E.D.N.Y. March 3, 2019) (by pleading guilty to charge, plaintiff "effectively conceded that there was probable cause to arrest him for [that charge]"). "[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." *Cameron*

*v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986); *see Timmins v. Toto*, 91 Fed. App'x 165, 166 (2d Cir. 2004) (observing that "in this Circuit, a plaintiff cannot establish any such claim [of false arrest] if he pleads guilty to a lesser offense pursuant to a plea agreement"); *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 377 (E.D.N.Y. 2013) ("[T]he fact of conviction is an affirmative defense to be raised by [defendants]."); *Unger v. Cohen*, 718 F. Supp. 185, 187 (S.D.N.Y. 1989) ("The [New York] Court of Appeals [has] explained that proof of conviction provides a complete common law defense to a false arrest claim. This same 'conviction defense' is available against [S]ection 1983 claims premised on false arrest.").

Here, Plaintiff's admission, under oath, that he pled guilty to the charge of assaulting a police officer[4] before Judge Zambelli in Westchester County, (Pl. Dep. 56–57, 59), warrants a finding that Police Defendants had probable cause to arrest Plaintiff for that crime, which is included as a charge in the WPPD Incident Report dated June 7, 2014, and Plaintiff's Booking Card for that date, (Defs. Aff. Ex. C.) In addition, Police Defendants had probable cause to arrest Plaintiff for criminal possession of a weapon,[5] menacing a police officer,[6] and menacing in the third degree,[7] as a matter of law. The undisputed facts are that Plaintiff entered WPH carrying a

---

[4] A person is guilty of assault on a police officer when, "with intent to prevent a … police officer … from performing a lawful duty, he or she causes serious physical injury to such … police officer …" N.Y. Penal Law § 120.08. The Court notes that the record does not contain evidence of serious injury to Police Defendants as a result of their altercation with Plaintiff. However, for the purposes of Plaintiff's Section 1983 claims, Plaintiff's guilty plea as to this charge satisfies the Court that Police Defendants had probable cause to arrest and charge him for this crime.

[5] A person commits criminal possession of a weapon in the fourth degree when, *inter alia*, he or she possesses a dangerous or deadly instrument or weapon, including a "dangerous knife," with intent to use the same unlawfully against another. N.Y. Penal Law § 265.01. Plaintiff was ultimately charged with criminal possession of a weapon in the third degree, N.Y. Penal Law § 265.02, since he had been previously convicted of other crimes. (*See* Defs. Aff. Ex. J.)

[6] "A person is guilty of menacing a police officer when he or she intentionally places or attempts to place a police officer or peace officer in reasonable fear of physical injury, serious physical injury, or death by displaying a deadly weapon, [including a] knife … where such officer was in the course of performing his or her official duties and the defendant knew or reasonably should have known that such victim was a police officer or peace officer." N.Y. Penal Law § 120.18.

[7] "A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." N.Y. Penal Law § 120.15.

serrated knife in his pocket, (Pl. Dep. 34–36), refused to cooperate with WPH staff or with Police Defendants despite repeated requests that he do so, (Pl. Dep. 19–20, 24–25, 27, 32–33), and refused to remove his hand from his pocket containing the knife, (Pl. Dep. 37). Video surveillance also shows that Plaintiff behaved in an agitated manner, lunging at Williams, Ravina, and Police Defendants while keeping his hand on the knife in his pocket and causing them to fear for their physical safety, even as they appeared to be speaking calmly to Plaintiff from a reasonable distance. (*See* WPH Video 3:04:45–3:15:00.) Thus, even absent testimony that Plaintiff was cursing and threatening to stab people, which Plaintiff disputes, there was ample reason for Police Defendants to believe that Plaintiff committed the crimes listed above.

Accordingly, Plaintiff's false arrest claim fails, and Police Defendants are entitled to judgment as a matter of law dismissing that claim.

   **b. Excessive Force**

Where a plaintiff claims that law enforcement officers used excessive force against him in violation of his Fourth Amendment rights, "a court must determine 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Wims v. N.Y. City Police Dep't*, 10-CV-6128 (PKC), 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Courts must make this determination from the perspective of a reasonable officer on the scene, considering what the officer knew at the time, not "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also id.* at 397 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."). The inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at

stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Considerations bearing on the reasonableness or unreasonableness of the force used include, but are not limited to "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396).

Applying the foregoing standards here, Plaintiff's excessive force claim fails as a matter of law. The SAC can be read to allege that Police Defendants exceeded the Fourth Amendment's constraints by tackling Plaintiff to the ground and hitting him in the back of his head. The record establishes that Omorvan and Hinckley's use of force in this respect was reasonable. From their perspective, a suspect they were informed had been disruptive at a hospital, (*see* Defs. Aff. Ex. K; Williams Dep. 19–21; Ravina Dep. 22), who would not comply with their direct orders and behaved in an agitated manner while refusing to remove his hand from his pocket, (Defs. Aff. Ex. K; Williams Dep. 22–25; Gonzalez Dep. 19–20; Ravina Dep. 22–23), which did in fact contain a weapon, (Pl. Dep. 35), made a sudden movement, lifting the hand that was in his pocket as someone yelled, "Knife!", (*See* Williams Dep. 24; Gonzalez Dep. 20; Ravina Dep. 24). Multiple bystanders were present, including unarmed hospital staff. (*See* WPH Video.) Omorvan and Hinckley's split second decision to use force to protect themselves and others under these circumstances was objectively reasonable. That they continued to push Plaintiff's head down while he was on the ground for about one minute, before he had been handcuffed, was likewise reasonable, as Plaintiff was struggling and resisting his arrest. (*See* WPH Video 3:16:00–3:17:40; Gonzalez Dep. 21–23; Ravina Dep. 25–27; Williams Dep. 26; Defs. Aff. Ex. K; Defs. Aff. Ex. C.)

In light of the foregoing, Police Defendants are entitled to judgment as a matter of law dismissing Plaintiff's excessive force claim.

   c. **Malicious Prosecution**

To succeed on a malicious prosecution claim under Section 1983 or New York law, a plaintiff must show "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *see Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

As with a false arrest claim, "probable cause is an absolute defense to a malicious prosecution claim in New York." *Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003). The probable cause standard in a malicious prosecution claim is "slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). Probable cause, in the context of malicious prosecution, is described as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

In order to prevail on a claim for malicious prosecution, a plaintiff must establish that the prior criminal proceeding terminated in his favor. Where a prosecution does not result in an acquittal, it is deemed to have ended in favor of the accused "only when its final disposition is such as to indicate the innocence of the accused." *Murphy v. Lynn*, 118 938, 948 (2d Cir. 1997). "Clearly, a conviction for a crime cannot be considered a termination in favor of the accused, unless, for example, that conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of

a writ of habeas corpus." *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402 (S.D.N.Y. 2007). Thus, "a guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Rivera*, 470 F. Supp. 2d at 408 (citing *Posr v. Court Officer Shield #207*, 180 F.3d 409, 418 (2d Cir. 1999)); *see Cintron v. Shield*, No. 18-CV-1619 (RA), 2019 WL 4194429, at *3 (S.D.N.Y. Sept. 3, 2019); *Fate v. Charles*, 24 F. Supp. 3d 337, 342 n.3 (S.D.N.Y. 2014).

As discussed *infra* p. 10, Plaintiff admits that he voluntarily entered a guilty plea to the charge of assaulting a police officer, one of the charges for which he was arrested on June 7, 2014. (*See* Pl. Dep. 56–57, 59; Defs. Aff. Ex. C.) Nothing in the record indicates that this conviction has been invalidated in any way. Since the criminal action brought against Plaintiff did not terminate in his favor, he cannot maintain a claim for malicious prosecution. In addition, even if the criminal proceedings had resulted in an acquittal for Plaintiff, the undisputed facts of this case, as discussed herein, would lead a reasonable person to believe that Plaintiff was guilty of the crimes he was charged with. Accordingly, Defendants are entitled to judgment as a matter of law dismissing Plaintiff's claim for malicious prosecution.

## II. State Law Claims

### a. Intentional Infliction of Emotional Distress

Plaintiff claims in the SAC that he suffered "emotional distress" as a consequence of Defendants' actions.[8] To succeed on a claim of intentional infliction of emotional distress under New York law9, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).

---

[8] There is no federal claim for intentional infliction of emotional distress. *Lamont v. City of New York*, No. 12–cv–2478 (WFK)(JMA), 2014 WL 4829328, at *7 n.7 (E.D.N.Y. 2014).

Claims for intentional infliction of emotional distress are "highly disfavored" under New York law. *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006) (citation omitted). To establish such claims, a plaintiff must show that the defendant's conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). Moreover, any allegations of suffering from severe emotional distress must be supported with objective medical evidence rather than speculative claims. *Allam v. Meyers*, 906 F. Supp. 2d 274, 282 (S.D.N.Y. 2012) (citing *Roche v. Claverack Coop. Ins. Co.,* 59 A.D.3d 914, 919 (N.Y. App. Div. 2009); *Walentas v. Johnes*, 257 A.D.2d 352, 353 (N.Y. App. Div.1999); *Christenson v. Gutman*, 249 A.D.2d 805, 808–09, (N.Y. App. Div.1998)).

The record is devoid of any evidence demonstrating that any of Defendants performed an intentional act with the purpose of causing or disregarding a substantial probability of causing severe emotional distress. Similarly, Plaintiff's SAC allegations of emotional distress find no objective medical support in the record, even in Plaintiff's own testimony. Accordingly, the Court concludes that Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law.

### b. Assault and Battery

To the extent that the SAC states a claim against Police Defendants for state law assault and battery, assault and battery claims against a police officer under New York law are governed by the Fourth Amendment excessive force standard discussed *infra* pp. 11–12. *See Humphrey v. Landers*, 344 Fed. App'x 686, 688 (2d Cir. 2009) ("Except for [Section] 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state

law assault and battery claims are substantially identical.") (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)) (internal quotation marks and brackets omitted). Since the Court finds that Police Defendants' use of force was not objectively unreasonable under the constitutional standard, Plaintiff's state law assault and battery claim fails.

## CONCLUSION

For the foregoing reasons, Defendants Anthony Omorvan and Tyler Hinckley's motion for summary judgment is GRANTED, and the Second Amended Complaint is dismissed with prejudice as against those Defendants. The Clerk of the Court is respectfully requested to terminate the motions at ECF Nos. 82 and 85, enter judgment in favor of Defendants Omorvan and Hinckley, and close the case. The Clerk of the Court is directed to mail a copy of this Opinion and Order to Plaintiff at his address as listed on the docket and show proof of such service on the docket.

Dated: September 23, 2019
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge